UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Robert Cyril Begordis,

                           Petitioner,

      vs.

Minnesota Correctional
Commissioner Joan Fabian,
James C. Backstrom, Dakota
County Attorney, and Mike
Hatch, Minnesota Attorney
General,

                           Respondents.        Civ. No. 05-2090 (ADM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petitioner's Application for Habeas Corpus relief, under Title 28 U.S.C. §2254.  See Docket No. 1.  The Petitioner appears pro se, and the Respondent appears by Thomas R. Ragatz, Assistant Minnesota Attorney General,

and Debra E. Schmidt, Assistant Dakota County Attorney.  For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II.  Factual and Procedural Background

In November of 2002, the Petitioner was convicted by a Jury in the Minnesota District Court for Dakota County, on State criminal charges of first-degree criminal sexual conduct with a thirteen (13) year old girl -- "B.P."  The Petitioner was sentenced to eighty-six (86) months in State prison, and he is currently serving his sentence at the Minnesota Correctional Facility, in Stillwater, Minnesota.

Following his conviction, the Petitioner filed a direct appeal, in which he argued that: (1) the prosecution should have been required to divulge certain potentially exculpatory evidence; (2) the prosecution should not have been permitted to present certain impeachment evidence to the Jury; and (3) there was insufficient evidence to support his conviction.   The Minnesota Court of Appeals rejected all of the Petitioner's claims on their merits, and affirmed his conviction.   See, State v. Begordis ("Begordis I"), 2004 WL 1326083 *1 (Minn.App., June 15, 2004), rev. denied (Minn., August 25, 2004).   The Minnesota Supreme Court denied the Petitioner's application for further review, and thereafter, the United States Supreme Court denied his application for a Writ of Certiorari, see, Begordis v. Minnesota, 543

U.S. 1126 (2005), as well as his subsequent request for a rehearing.  See, <u>Begordis v.</u>

<u>Minnesota</u>, 544 U.S. 944 (2005).

The Petitioner's original Federal Habeas Corpus Petition listed four (4) grounds

for relief -- the three (3) claims that he previously presented to the Minnesota Court

of Appeals in his direct appeal, plus a new claim, which asserted an ineffective

assistance of appellate counsel claim.  Since the Petitioner had failed to exhaust his

State Court remedies for all of his then-current claims, we recommended that the

action be summarily dismissed, but without prejudice, and the District Court, the

Honorable Ann D. Montgomery presiding, adopted our Report.  See, <u>Report and</u>

<u>Recommendation</u>, <u>Begordis v. Fabian</u>, Civ. No. 05-1678 (ADM/RLE), <u>Docket Nos.</u>

<u>3 and 4</u>.

The Petitioner then filed his current Habeas Corpus Petition on September 9,

2005.  <u>Docket No. 1</u>.  The Petition reiterates the same grounds for relief that the

Petitioner had previously raised in his original Habeas Corpus Petition, except for the

omission of the unexhausted ineffective assistance of counsel claim.  See, <u>Petition</u>,

<u>Docket No. 1</u>.[1]  In response, the Respondent filed a Motion to Dismiss, based on the

---

[1]We note, in passing, that the posting of the Petition to the CM/ECF filing system failed to fully image several of the pages, including a listing of the grounds on which
(continued...)

Petitioner's alleged failure to exhaust his State Court remedies on those Federal issues. See, <u>Docket No. 4</u>.  On April 3, 2006, we recommended that the Respondent's Motion to Dismiss be denied, and that the Respondent be granted leave to respond to the merits of the Petition, <u>Docket No. 8</u>, and our Recommendation was adopted, by Order of the District Court, on July 11, 2006.  <u>Docket No. 12</u>.

III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." <u>Title 28 U.S.C. §2254(a)</u>.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  <u>Id.</u>; see also, <u>Lupien v. Clarke</u>, 403 F.3d 615, 618 (8th Cir.

---

[1](...continued)
the Petitioner predicates his request for Habeas relief.  Our review of the actual Petition lists the same three (3) grounds as the Petitioner advanced in his State Court proceedings.

- 4 -

2005); <u>Newton v. Kemna</u>, 354 F.3d 776, 782 (8th Cir. 2004); <u>Robinson v. Leapley</u>, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.   See, <u>Antiterrorism and Effective Death Penalty Act of 1996</u>, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

<u>Title 28 U.S.C. §2254(d)</u>.

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a

Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  See,

Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13; see also, Penry v. Johnson, 532 U.S. 782, 792-93 (2001).

The Court further explained that the consideration of a State Court's decision, under

the "unreasonable application" clause, requires a Federal Court to "ask whether the

state court's application of clearly established federal law was objectively

unreasonable."  Id. at 409; see also, Penry v. Johnson, supra at 792-93; Evanstad v.

Carlson, --- F.3d ---, 2006 WL 3436142 at *3 (8th Cir., November 30, 2006); Smulls

v. Roper, 467 F.3d 1108, 1113 (8th Cir. 2006); Underdahl v. Carlson, 462 F.3d 796,

798 (8th Cir. 2006).

Under this heightened standard of review, a Federal Court "may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Underdahl v. Carlson, supra at 798; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was objectively unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. See, Evenstad v. Carlson, supra at *5, citing Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992); Middleton v. Roper, 455 F.3d 838, 845 (8th Cir. 2006); Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005). Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); Link v. Luebbers, 469 F.3d 1197, 1202 (8th Cir. 2006); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) ("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1); Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005)(same).

B.    <u>Legal Analysis</u>.  As stated, the Petitioner claims that his Due Process rights were violated, and seeks Habeas relief, on the following three (3) grounds:  1) that he was denied the right to present a defense because of the failure of the prosecution to produce all exculpatory evidence for in-camera review by the State Court ("Ground One"); 2) that he was denied the right to present a defense by the State Court's cumulative evidentiary rulings ("Ground Two"); and 3) that the evidence was insufficient to prove the elements of the charge beyond a reasonable doubt ("Ground Three").  The Respondent opposes the Petition on its merits.

Following a thorough review of the Record presented, we conclude that the decisions of the State Courts were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, nor were those decisions based upon an unreasonable determination of the facts.  Since they involve somewhat different considerations, we separately address the Grounds advanced by the Petitioner.

1.    <u>Ground One</u>.  In Ground One, the Petitioner claims that his Due Process rights were violated by the prosecution's failure to comply with an Order to produce all records relating to B.P.'s medical and educational history, and that the failure rendered the State Court unable to conduct an in-camera review of potentially

exculpatory evidence.  He further argues that the State Court erred by failing to disclose a record of those documents that were subject to in-camera review, and that, as a result of those errors, he was unable to engage in effective cross-examination of the witnesses against him.

"The interest of the Government in any criminal prosecution 'is not that it shall win a case but that justice shall be done.'"  Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000), quoting Lingle v. Iowa, 195 F.3d 1023, 1026 (8th Cir. 1999), quoting in turn, Berger v. United States, 295 U.S. 78, 88 (1935).  "'For this reason * * * the prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment,' a rule known as the Brady rule."  Id., see, Brady v. Maryland, 373 U.S. 83, 87 (1963).  "To establish a violation of Brady, a defendant must show that: (1) the prosecution suppressed evidence, (2) that the evidence was favorable to the accused, and (3) the evidence was material."  Id., see also, Banks v. Dretke, 540 U.S. 668, 691 (2004); United States v. Carman, 314 F.3d 321, 324 (8th Cir. 2002); Johns v. Bowersox, 203 F.3d 538, 545 (8th Cir. 2000).

Evidence will only be material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004), quoting United

States v. Bagley, 473 U.S. 667, 682 (1985).  A reasonable probability exists when the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  Burton v. Dormire, 295 F.3d 839, 847 (8th Cir. 2002), quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995), see Dye v. Stender, supra at 666, quoting United States v. O'Conner, 64 F.3d 355, 358 (8th Cir. 1995).  "Materiality 'is not established through the mere possibility that the suppressed evidence might have influenced the jury.'"  United States v. Carman, supra at 324, quoting United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998).  In the absence of materiality, any failure to disclose information to a defendant will be considered harmless error.  See, Dye v. Stender, supra at 665, citing United States v. Williams, 194 F.3d 886, 889 (8th Cir. 1999).

"The Brady rule applies to evidence which "impeaches the credibility of a government witness," Evenstad v. Carlson, supra at *4, quoting Dye v. Stender, supra at 665, quoting in turn, United States v. O'Conner, supra at 358, "whether or not the accused has specifically requested the information.  Id., citing Kyles v. Whitley, 514 U.S. 419, 433-34 (1995).  A review of the governing case law reveals that the materiality of impeachment evidence depends on both the importance of the witness in establishing guilt, and the strength of the evidence at issue.  See, Dye v. Stender,

supra at 666-667 (Letters from prosecuting attorney tending to impeach two government witnesses' testimony that they did not have deals with the government, where the Court found "overwhelming circumstantial evidence of [defendant's] guilt," were not material.); Clay v. Bowersox, supra at 1000-1001 (The exact details of an agreement between the Government and a witness, where the Jury was appraised of the fact that the witness was offered leniency in return for his truthful trial testimony, and where the most damaging testimony to the defendant came from other witnesses, were not material.); Burton v. Dormire, supra at 847 (Evidence of a second plea agreement, where first plea agreement was disclosed, was not material because of its cumulative nature and limited impeaching effect); United States v. Wayne, 903 F.2d 1188, 1191-93 (8th Cir. 1990)(Drug transaction records were not material when the witness was thoroughly cross-examined, and where the evidence withheld by the prosecution was primarily cumulative).

The Minnesota Court of Appeals considered the Petitioner's argument, and engaged in an independent review of the records, that had been preserved for appeal, and that had been submitted to the Trial Court. See, Begordis I, supra at *2. The Court of Appeals found no evidence that the State had failed to disclose all of the relevant documents, and additionally, determined that there was no abuse of

discretion, by the Trial Court, in declining to identify the specific documents that it had examined.  Id., at *3.  The Court of Appeals concluded that, in disclosing the specific documents, and the sources of some of the reviewed documents, and in declining to name others, the Trial Court had struck a proper balance in maintaining B.P.'s privacy, while ensuring that the Petitioner had the evidence to which he was entitled.  Finally, from its in-camera review of B.P.'s medical and behavioral history, the Court of Appeals concluded that the Trial Court properly determined that there was no evidence that B.P. was incompetent or not credible, and therefore, the Petitioner's ability to engage in effective cross-examination was not impaired by the suppression of some of the records.

The Petitioner cites Pennsylvania v. Ritchie, 480 U.S. 39 (1987), to support his contention that the State Court decided his claim contrary to Supreme Court precedent.  See, Title 28 U.S.C. §2254(d)(1).  There, the Supreme Court found a Due Process violation when a State Court failed to order the production, and conduct an in-camera review of records, which were protected by a State confidentiality law relating to the juvenile daughter of a man who was accused of her sexual assault, so as to determine if the records contained exculpatory information.  See, Pennsylvania v. Ritchie, supra at 58.  The Petitioner argues that the facts, here, closely resemble

those confronted by the United States Court of Appeals for the Fourth Circuit Court which, in  Love v. Johnson, 57 F.3d 1305 (4th Cir. 1995), followed the reasoning in Pennsylvania v. Ritchie, and found a Due Process violation when a State Court quashed a defendant's attempt to subpoena the victim's medical records, and thus, failed to conduct an in-camera review of any of the requested documents. But see, Newton v. Kemna, 357 F.3d 776, 785 (8th Cir. 2004)(calling into doubt the permissibility of an in-camera review of records protected by the psychotherapist-patient privilege).

We believe that the Petitioner's claim is plainly distinguishable from those at issue in both Pennsylvania v. Ritchie, and Love v. Johnson, and find no competent reason to disturb the Judgment of the Minnesota Court of Appeals on that issue.  Both cases are limited to circumstances where a State Court failed to order the production, and thereafter failed to conduct an in-camera review, of contested documents that arguably contained exculpatory information.  See, Pennsylvania v. Ritchie, supra at 58 (holding that the petitioner was entitled to have a file of submitted documents "reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial"); Love v. Johnson, supra at 1313 (noting that petitioner has "the basic right, to have the information he has sufficiently

identified submitted to the trial court for in camera inspection and a properly reviewable judicial determination made whether any portions meet the 'material' and 'favorable' requirements for compulsory disclosure.").

As the Court in Pennsylvania v. Ritchie acknowledged, as long as the State Court ordered the production of rightfully requested documents, and engaged in their in-camera review, the ultimate determination of admissibility is left to the discretion of the Court. See, Pennsylvania v. Ritchie, supra at 57, citing United States v. Agurs, 427 U.S. 97 (1976), and Brady v. Maryland, supra at 83. The Petitioner has not shown, by clear and convincing evidence, that the State Court failed to order the production of B.P.'s records, or that the prosecution failed to respond to that directive. More importantly, the Record confirms that both the Trial Court, and the Court of Appeals, engaged in independent, in-camera reviews of the contested documents, which is the relief expressly required by Supreme Court precedent. The Trial Court exercised its discretion in releasing those documents that the Court felt would be useful to the defense, and retained those that were felt to compromise the security and well-being of B.P. We find no abuse of the Court's discretion in that respect.

In addition to his Due Process claim, the Petitioner suggests that the failure of the Trial Court to insure, that its order for the production of records was followed,

prevented him from effectively engaging in the cross examination of B.P. at Trial. The suggestion is also without merit. The Confrontation Clause of the Sixth Amendment mandates that: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" United States Constitution, Amendment VI; Idaho v. Wright, 497 U.S. 805, 813 (1990). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

In Pennsylvania v. Ritchie, supra at 53, a plurality noted that the right of confrontation is exclusively a Trial right, and suggested that the ability of a defendant to question adverse witnesses "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." See also, United States v. Thompson, 2005 WL 3050634 *5 (E.D. Mo., November 14, 2005); United States v. Stone, 2005 WL 1845153 *2 (D.S.D., July 29, 2005). Furthermore, even if the pre-trial disclosure of information is denied, "[t]he availability of other opportunities to elicit the same information on cross-examination is significant in determining whether a defendant's constitutional rights have been violated." Layton v. South Dakota, 918 F.2d 739, 741-42 (8th Cir. 1990)(no violation

of the Confrontation Clause to suppress juvenile record of witness when Record revealed that the Jury was made aware of the witness' history on cross-examination).

The Petitioner does not dispute that he was able to cross-examine B.P. at Trial, and the Record reflects that he had access to the records that had been released by the Trial Court after in-camera review.  While he undoubtedly wanted to review all of B.P.'s records prior to Trial, he does not cite, and cannot cite, any case which holds that he holds that right.  Here, we conclude that no reasonable Jury would have changed its evaluation of B.P.'s credibility had the Petitioner been able to question her about specific medical diagnoses, treatments, or behaviors, as contained in the medical and educational records that were subjected to in-camera review by the Minnesota Trial and Appellate Courts, as we find no competent basis to undermine the State Court rulings on this issue.   Therefore, we find no basis for Habeas relief on the basis of the Petitioner's Ground One.

2.     Ground Two.   In Ground Two, the Petitioner maintains that the evidentiary rulings of the Trial Court violated his Due Process rights by preventing him from presenting a competent defense.  Specifically, he claims that the Trial Court

erred by admitting evidence of a prior bad act, and thereafter, by denying him the opportunity to introduce his own prior consistent statements.

"'[F]ederal habeas corpus relief does not lie for errors of state law' * * * [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, supra at 67-68 (citations omitted); Lannert v. Jones, 321 F.3d 747, 752 n.3 (8th Cir. 2003), cert. denied, 540 U.S. 917 (2003). Generally, a State Court's evidentiary rulings do not implicate Federal constitutional rights such as would give rise to a Federal Habeas claim. See, Sera v. Norris, 400 F.3d 538, 547 n. 8 (8th Cir. 2005), citing Weston v. Dormire, 272 F.3d 1109, 1113 (8th Cir. 2001); see also, Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). Since questions concerning the admissibility of evidence are matters of State law, they are reviewable in Federal Habeas proceedings "only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984), cert. denied, 469 U.S. 919 (1984), citing Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983), cert. denied, 464 U.S. 934 (1983); see also, Davidson v. Bowersox, 288 F.3d 1076, 1078-79 (8th Cir. 2002), cert. denied sub nom. Davison v. Luebbers, 537 U.S. 925 (2002).

In this Circuit, a petitioner must prove that the asserted error was so conspicuously prejudicial, or of such magnitude, that it fatally infected the Trial, and deprived the petitioner of fundamental fairness.  See, Amrine v. Bowersox, 238 F.3d 1023, 1032-1033 (8th Cir. 2001), cert. denied sub nom. Amrine v. Luebbers, 534 U.S. 963 (2001), quoting Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988).  In conducting its review of a Trial Court's evidentiary rulings, a Federal Habeas Court must review the totality of the facts in the case, and analyze the fairness of the particular Trial under consideration.  See, Bennett v. Lockhart, 39 F.3d 848, 856 (8th Cir. 1994).

A Habeas petitioner, who claims that a State Court's evidentiary ruling violated his Federal constitutional rights, faces a heavy burden of persuasion.  "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial -- i.e., that absent the alleged impropriety the verdict **probably** would have been different."  Gee v. Groose, 110 F.3d 1346, 1350 (8th Cir. 1997), quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)[emphasis added]; see also, Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999), cert. denied, 528 U.S. 1097 (2000)(same).

The Petitioner contends that the Trial Court's decision to admit evidence of prior bad acts, and to deny the testimony of the Petitioner's witness as to a prior consistent statement, constituted a denial of his Due Process rights under the Fourteenth Amendment. Specifically, he contends that the Trial Court made two errors: 1) admitting evidence of his military-discharge status, in violation of Rule 608(b), Minnesota Rules of Evidence;[2] and 2) excluding testimony that the defense offered as a prior consistent statement, in violation of Rule 801(d)(1)(B), Minnesota Rules of Evidence. We address each contention in turn.

a.     The Failure to Exclude Prior Bad Acts. On the witness stand, the Petitioner made several references to his prior service in the military, and he also introduced evidence of his good character through the testimony of a witness. On cross-examination, the prosecution questioned the Petitioner about the terms of his military discharge, and he responded that he "got an early out," or a "BCD" discharge. See, Begordis I, supra at *4. The fact that "BCD" refers to a "bad conduct discharge" was not revealed to the Jury. See, Respondents' Memorandum in Opposition, Docket

---

[2]The Minnesota Court of Appeals cites to Rule 608(6), Minnesota Rules of Evidence, see, Begordis I, supra at *4, but the context of its discussion reveals that Court intended to cite to Rule 608(b), and the reference to Rule 608(6) is, undoubtedly, a typographical error.

No. 10, at 7.  After considering the Petitioner's State Habeas Petition, the Court of Appeals found that the Trial Court had abused its discretion by admitting the Petitioner's military discharge status since, under the Minnesota Rules of Evidence, a specific instance of misconduct is not admissible to rebut a defendant's evidence of good character, unless it is probative of untruthfulness.  See, Rule 608(b), Minnesota Rules of Evidence; cf., State v. Hunt, 2006 WL 1603223 *1 (Minn.App., June 13, 2006).  However, the Court of Appeals held that this was harmless error, as the Petitioner had failed to meet his burden of proving that he was prejudiced by the erroneously admitted evidence.  See, Begordis I, at *4; see also, Chapman v. California, 386 U.S. 18, 22 (1967)(holding constitutional errors do not merit automatic reversal if shown to be harmless beyond a reasonable doubt); Brecht v. Abrahamson, 507 U.S. 619, 636 (1993)(State Courts are fully qualified to identify constitutional error and evaluate its prejudicial effect).

We see no reason to disturb the finding of the Minnesota Court of Appeals that the Petitioner was not prejudiced by the admission of his military discharge status. The  significance of "BCD" was never explained to the Jury, and the Petitioner has presented no evidence that would establish that his statement, on cross-examination, affected the Jury's assessment of his credibility.  Likewise, the admitted evidence was

not the subject of any further discussion, and was not emphasized to the Jury.  See, United States v. Crenshaw, 359 F.3d 977, 1004 (8th Cir. 2004)(finding harmless error when unlikely that improperly admitted prior bad acts could have "infected the entire trial"); United States v. Splain, 545 F.2d 1131, 1133 (8th Cir. 1976)( passing reference to prior bad act unlikely to have effect of planting prejudice in Jurors' minds); compare, United States v. Clemons, 503 F.2d 486, 491 (8th Cir. 1974)(undue prejudice when improper evidence took up "considerable time" at Trial).

Here, as the Petitioner admits, the mention of the BCD discharge was fleeting, and the prior bad act itself was "completely irrelevant."  Petitioner's Memorandum in Support, at 15.  We conclude that the Minnesota Court of Appeals was reasonable in concluding that the Jury would have failed to note the significance of the challenged testimony, and that no undue prejudice resulted from its admission.

   b. The Failure to Admit Prior Consistent Statement.  The Petitioner urges that the Trial Court erred by excluding witness testimony that the Petitioner had suggested that B.P. see a therapist, which the Petitioner offered as a prior consistent statement to rebut the State's argument that he had objected to counseling.  The Court of Appeals determined that, under Rule 801(d)(1)(B), Minnesota Rules of Evidence, a prior consistent statement is admissible only if the corroborating statement was

given after the Petitioner's original statement.  See, <u>Slater v. Baker</u>, 301 N.W.2d 315, 319 (Minn. 1981).  Consequently, since the Petitioner offered, at Trial, his witness' testimony prior to his own, the Court of Appeals concluded that the Trial Court had properly excluded the proffered statement.

Of course, it is well established "that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony."  <u>Boysiewick v. Schriro</u>, 179 F.3d 616, 620 (8th Cir. 1999), cert. denied, 528 U.S. 1141 (2000).  The right, however, is not unlimited.  See, <u>Khaalid v. Bowersox</u>, 259 F.3d 975, 978 (8th Cir. 2001)("The Constitution does not, however, guarantee that criminal defendants may call every witness they choose."), cert. denied, 535 U.S. 1021 (2002), citing <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998).  "An accused 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" <u>Khaalid v. Bowersox</u>, supra at 978, quoting <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988).

Here, the Petitioner's evidentiary claim is simply an improper attempt to re-litigate his Trial.  See, <u>McFarland v. Scott</u>, 512 U.S. 849, 859 (1994)(holding that a criminal Trial is the "main event," and that the Habeas Writ should not be used to "re-

litigate state trials"). We understand the Petitioner to believe that the additional testimony, which he sought to provide, would have been relevant. See, <u>Boysiewick v. Schriro</u>, supra at 620. However, we cannot say that the decision of the Minnesota Court of Appeals, on this evidentiary issue, was "objectively unreasonable," and we find no reason to believe that the outcome of the Petitioner's Trial would probably have been different if he had been allowed to offer that additional testimony. As a result, we conclude that the Petitioner's evidentiary complaints are precisely the type of contentions which the Supreme Court has emphasized as being inappropriate bases for Federal Habeas relief. See, <u>Estelle v. McGuire</u>, supra at 67-68.

The Petitioner raised the same argument concerning the exclusion of evidence in his direct appeal. There, the Minnesota Court of Appeals concluded that the Trial Court did not abuse its discretion in refusing to allow the witness' testimony prior to that of the Petitioner. Neither the Petitioner's repetition of those same arguments here, nor the Record as a whole, provides any reason to undermine the Minnesota Courts' resolution of that evidentiary question. Thus, the Petitioner has not established that the Trial Court's decision to exclude the testimony of a defense witness was an error so conspicuously prejudicial as to fatally infect his Trial, or to deprive him of

fundamental fairness.  See, <u>Maggitt v. Wyrick</u>, 533 F.2d 383, 385 (8th Cir. 1976), cert.

denied, 429 U.S. 898 (1976).

In analyzing the Petitioner's evidentiary claims, the State Courts applied law which is consistent with clearly established Federal law, and the State Courts' application of its factual findings to the law was entirely reasonable.  Consequently, we recommend that the Petitioner be denied Habeas Corpus Relief based on Ground Two of his Petition.

3.    <u>Ground Three</u>.  In Ground Three, the Petitioner alleges that the State failed to prove all of the elements of first degree criminal sexual conduct beyond a reasonable doubt, and that the evidence admitted by the Trial Court, therefore, was insufficient to support his conviction.

An essential element of Due Process, which is guaranteed  by the Fourteenth Amendment, is that no person be convicted of a crime unless the trier of fact is convinced of the existence of every element of the offense beyond a reasonable doubt. See, <u>In re Winship</u>, 397 U.S. 358, 361 (1970); <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979).   The test is not whether this Court believes that the evidence at Trial established the elements of the crime beyond a reasonable doubt.  See, <u>Sera v. Norris</u>, supra at 543.  Rather, in a Habeas Corpus proceeding under Section 2254, the Court

- 25 -

must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004), citing Jackson v. Virginia, supra at 319.  As noted, the findings of fact made by the State Courts are presumed correct unless the Petitioner rebuts that presumption with clear and convincing evidence.  Id., citing 28 U.S.C. 2254(e)(1). In making our determination, as a reviewing Court, we must view the evidence, including all permissible inferences to be drawn therefrom, in a light most favorable to the Jury's Verdict.  See, United States v. Beaman, 361 F.3d 1061, 1064 (8th Cir. 2004), citing United States v. McCarthy, 244 F.3d 998, 999 (8th Cir. 2001).   However, determinations as to witness credibility are "virtually unreviewable on appeal because it is preeminently the job of the finder of fact." Id., quoting United States v. Morris, 327 F.3d 760, 761 (8th Cir. 2003) cert. denied, 540 U.S. 920 (2003).

Before the Minnesota Court of Appeals, the Petitioner argued that the State failed to prove that he committed multiple acts of penetration so as to support his conviction of first-degree criminal sexual conduct.  See, Begordis I, at *5.  To sustain a charge of criminal sexual conduct, State law requires a showing that the accused intentionally engages in multiple acts of sexual penetration over an extended period

of time, with a person under sixteen (16) years of age, with whom he had a significant relationship. See, <u>Minnesota Statutes Section 609.342, Subdivision 1(h)(iii)</u>; see also, <u>Begordis I</u>, at *5; cf., <u>State v. Wosika</u>, 2006 WL 2255707 at *1-2 (Minn. App., August 8, 2006); <u>In re Welfare of M.J.</u>, 2006 WL 1460576 at *2 (Minn.App., May 30, 2006).

Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, or * * * any intrusion however slight into the genital or anal openings of the complainant's body by any part of the actor's body." <u>Minnesota Statutes Section 609.341, Subdivision 12(l)</u>; see also, <u>Begordis I</u>, at *5; cf., <u>State v. Wosika</u>, supra at *1. The Court of Appeals found that ample evidence supported the Petitioner's conviction for first-degree criminal sexual conduct, and we agree. The Petitioner lived in B.P.'s household, and had a significant relationship with B.P., who called the Petitioner "dad" at times. B.P. testified that the Petitioner sexually abused her beginning when she was nine (9) years old, and lasting until she was twelve (12) years old. The Court of Appeals also found that the Record established that the Petitioner engaged in multiple acts of oral sex with B.P. during the period in question.

The Petitioner is plainly mistaken when he argues that "the state was required to show an intrusion into the vaginal opening of B.P.," in order to provide sufficient evidence for his conviction. See, Petitioner's Memorandum in Support, at 19. Under State law, "penetration of the vagina is not required for the act of cunnilingus to constitute 'sexual penetration,' as the term is defined in section 609.341, subd. 12, and as it is used in section 609.342." State v. Blom, 358 N.W.2d 63, 64 (Minn. 1984); State v. Bearskin, 1998 WL 188552 at *1-2 (Minn.App., April 21, 1998), rev. denied (Minn., May 28, 1998)(sufficient evidence for sexual penetration found when juvenile testified that defendant had "licked her" on her "private"); cf., State v. Mosier, 1997 WL 370470 at *6 (Minn.App., July 8, 1997)(testimony that defendant "licked" victim in "privacy area" sufficient to allow Jury to find first-degree criminal sexual conduct). The Petitioner admits that, at Trial, B.P. testified that the Petitioner had touched her "vagina or vaginal area with * * * part of his mouth or tongue," although she was not sure of the number of times that such had happened. See, Petitioner's Memorandum in Support, at 18. B.P. also testified that she touched the Petitioner by "sucking" on his penis "once or twice." Id. at 18-19. We will not disturb a finding of the State Courts, absent evidence or case law to the contrary -- which is not proffered here --

that such evidence is sufficient to establish multiple acts of penetration so as to properly sustain a conviction for first-degree criminal sexual conduct.

The Petitioner strains credulity by further arguing that, even if it was reasonable for the Jury to have found that one act of penetration took place, it could not have been convinced, beyond a reasonable doubt, that multiple acts took place. State law permits a conviction on first degree criminal sexual conduct if the Jury finds at least one act of penetration accompanied by multiple acts of abuse. See, State v. Shamp, 422 N.W.2d 520, 525 (Minn.App. 1988). However, the Trial Court instructed the Jury that it was required to find multiple acts of penetration, and the State did not object to that instruction, which affords the Petitioner a generous benefit of the doubt, by reflecting that the Jury was instructed conservatively. See, Petitioner's Memorandum in Support, at 18. In arriving at its decision, the Jury was instructed that it must find multiple acts to have taken place, and we see no evidence presented that would demonstrate that the Jury disobeyed that instruction. See, Conley v. Very, 450 F.3d 786, 788 (8th Cir. 2006)(reviewing Court presumes that the Jury "followed its instructions."), citing Weeks v. Angelone, 528 U.S. 225, 234 (2000).

In the final analysis, "[w]e reverse the jury's verdict for insufficient evidence 'only if no reasonable jury could have found [the Petitioner] guilty beyond a

reasonable doubt." United States v. Jourdain, 433 F.3d 652, 655 (8th Cir. 2006), cert. denied, --- U.S. ---, 126 S.Ct. 2044 (2006), quoting United States v. Henderson-Durand, 985 F.2d 970, 975 (8th Cir. 1993), cert. denied sub nom. Arnold v. United States, 510 U.S. 856 (1993); United States v. Anwar, 428 F.3d 1102, 1108 (8th Cir. 2005), cert. denied, --- U.S. ---, 126 S.Ct. 1806 (2006)(same).  Applying that standard, we find no basis to question the sufficiency of evidence which led the Jury to convict the Petitioner of first-degree criminal sexual conduct.  Accordingly, finding no ground on which to grant the Petitioner Habeas relief, we recommend that his Petition be dismissed with prejudice.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.


Dated:  January 4, 2007                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than January 22, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 22, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.